IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

RODOLFO ROMERO,                          )
                                         )
              Petitioner,                )
                                         )
         v.                              )    CIV 08-02020 PHX SRB (MEA)
                                         )
CHARLES RYAN and                         )    REPORT AND RECOMMENDATION
ARIZONA ATTORNEY GENERAL,                )
                                         )
              Respondents.               )
_____ )

TO THE HONORABLE SUSAN R. BOLTON:

On or about October 22, 2008, Petitioner filed a *pro se* petition seeking a writ of habeas corpus pursuant to 42 U.S.C. § 2254.  Respondents filed an answer ("Answer") (Docket No. 12) to the petition on May 12, 2009.  The time allowed Petitioner to file a traverse to the answer expired on or about June 12, 2009.

## I Background

A Maricopa County grand jury indictment returned June 21, 1988, charged Petitioner and a co-defendant, Mr. Conde, with one count of first-degree murder, one count of burglary in the first-degree, five counts of armed robbery, one count of attempted armed robbery, and three counts of aggravated assault. See Answer, Exh. A.  The charges arose from a bank robbery

occurring on May 27, 1988, in Phoenix, Arizona.[1]  A police
officer was shot and killed as he attempted to stop the fleeing
robbers.  Id., Exh. C.

Petitioner's co-defendant was taken into custody the
day the crimes occurred.  Id., Exh. C at 3.  Petitioner left the
United States after the crimes occurred. Petitioner's co-
defendant was tried and convicted by a jury of the charges
stated in the indictment in late 1989, and was sentenced to an
aggregate in excess of 200 years imprisonment.  Id., Exh. TT at
2.

In May of 1996, eight years after the indictment was
issued, the Arizona Attorney General submitted an extradition

---

[1] The following is taken from the Arizona Court of Appeals'
decision in Mr. Conde's appeal:
> The evidence at trial showed that [Mr. Conde] and
> an accomplice entered a bank armed with handguns
> which they pointed at customers and bank
> personnel.  Conde leaped on the top of a counter
> and ordered a teller to place money in a plastic
> bag.  He then ordered a customer to surrender her
> car keys so that he and his accomplice could
> escape.  They obtained their getaway vehicle in
> the bank parking lot by taking it from its driver
> at gunpoint.  At this juncture, the police
> officer, working off-duty as a bank security
> guard, opened fire on Conde and his accomplice.
> In the exchange of shots the officer was killed.
>   The robbers fled the scene in the stolen car.
> During the next half-hour, they commandeered two
> other vehicles at gunpoint.  When police located
> Conde and ordered him to stop, he fired at them.
> He was wounded and was eventually taken into
> custody.

Arizona v. Conde, 174 Ariz. 30, 31, 846 P.2d 843, 844 (1992).  See
also Conde v. Flanagan, CIV 02-2034 PHX SRB GEE (D. Ariz).
At a pretrial conference in Petitioner's case the state
indicated its theory of Petitioner's case was that Mr. Conde actually
shot the bullet that killed the police officer; the charge of murder
against Petitioner was predicated on acccomplice liability.  See
Response, Exh. G at 46-48.

request to the United States Department of Justice, asking for Petitioner's extradition in the event that law enforcement authorities could locate Petitioner in Mexico. Id., Exh. CC at 3 & App. A at 1. Approximately four years later, in June of 2000, Petitioner was arrested by Mexican authorities in Mexico. Id., Exh. C at 3.

On February 20, 2001, a Mexican district court approved the United States' request to extradite Petitioner to Arizona. Id., Exh. CC at 34. On March 15, 2001, Mexico's Secretary of Foreign Relations formally granted the extradition request. Id., Exh. CC at 34. Before Petitioner could be brought to the United States, however, on October 2, 2001, the Mexico Supreme Court concluded that the sentence of life imprisonment constituted cruel and unusual punishment and could not be imposed on a Mexican national by any court. Id., Exh. CC at 34. Accordingly, Petitioner subsequently successfully moved a Mexico federal court to set aside the grant of extradition because one of the offenses charged by Arizona, i.e., first degree murder, was punishable by life imprisonment. Id., Exh. CC at 35. The Mexican federal court's opinion setting aside the approval of extradition allowed Mexico's Secretary of Foreign Relations to file a pleading addressing whether Petitioner's extradition was barred by the possible imposition of a life sentence. Id., Exh. CC at 35.

Accordingly, on October 18, 2001, Mexico's Secretary of Foreign Relations requested assurances from the United States that Petitioner "[would] not be subject to imprisonment for life

-3-

for murder..." if extradited to Arizona.  <u>Id.</u>, Exh. F, Attach. Referencing the governing extradition treaty between the United States and Mexico, the American ambassador responded *inter alia* that, in the event of Petitioner's conviction, "the State of Arizona [would not] seek or recommend a penalty of 25 years to life imprisonment at the sentencing phase of the judicial proceeding in this case," but that instead the State of Arizona would recommend imposition of a sentence of "50 to 60 years' imprisonment."  <u>Id.</u>, Exh. F, Attach.  Regarding the possibility that the Arizona trial court might impose a life sentence upon Petitioner's conviction, notwithstanding the above-referenced recommendation, the United States ambassador informed Mexico that, should that circumstance arise, "the State of Arizona will take appropriate action to formally request that the court reduce such sentence to a term of years."  <u>Id.</u>, Exh. F, Attach. The ambassador acknowledged that, nonetheless, "[i]t would then be for the court to decide whether to accept the executive authority's determination."  <u>Id.</u>, Exh. F, Attach.

On November 28, 2001, Mexico granted the United States' request to extradite Petitioner on every requested charge except the charge of burglary.  <u>Id.</u>, Exh. CC, App. A at 7.[2]  The opinion approving the extradition noted the agreement complied with the relevant treaty in that Petitioner was not facing a death sentence and also noted the exchange of diplomatic notes

---

[2] Mexico did not extradite on this charge because the Mexican criminal code lacked an offense equivalent to second degree burglary.  <u>See</u> Answer, Exh. DD at 28 & App. A at 7, 14-15

-4-

regarding Mexico's insistence that Petitioner be sentenced to a term of years, rather than an indeterminate sentence, i.e., a sentence of life imprisonment.  Id., Exh. CC, App. A at 13-14. On March 21, 2002, Mexico extradited Petitioner to Arizona. Id., Exh. CC at 3.

Just prior to trial, Petitioner's counsel moved the court to reduce the charge of first-degree murder to second-degree murder, citing the extradition treaty and agreement between Mexico and the United States.  Id., Exh. E & Exh. G. After the matter was fully pled, the trial court heard argument on the motion November 18, 2002.  Id., Exh. G.  The trial court denied the motion at that time.  Id., Exh. G at 15.

Petitioner's jury trial on the 1988 charges began on November 18, 2002.  Id., Exh. H.  Due to unavailability of witnesses, the trial court granted the state's motion to dismiss one count of armed robbery and one count of aggravated assault.  Id., Exh. O at 132-33; Exh. S.  Without any objection from the defense, the jury was instructed as to the lesser-included offense of second-degree murder.  Id., Exh. EE at 4 & Exh. P at 38.  Defense counsel told the jury during closing argument that Petitioner was "only guilty of Second Degree Murder."  Id., Exh. P at 94.

The jury found Petitioner guilty of one count of first-degree murder, one count of burglary, four counts of armed robbery, one count of attempted robbery, and three counts of aggravated assault.  Id., Exh. P at 112-17.

During the trial, and after Petitioner was convicted but prior to sentencing, his defense counsel notified the Mexican government of Petitioner's trial and conviction on the charge of first degree murder. <u>Id.</u>, Exh. DD at 33; Exh. EE at 5. The Mexican government responded that it was not in favor of the imposition of a life sentence. <u>Id.</u>, Exh. DD at 33;[3] Exh. EE.

Petitioner's trial counsel filed a motion for a new trial asserting Petitioner could not be convicted of murder in the first degree or burglary because the charges were precluded by the extradition agreement. Defense counsel also moved to dismiss both these charges. <u>Id.</u>, Exh. CC at 6. At a hearing on February 7, 2003, the parties stipulated to dismissal of the conviction for burglary. <u>Id.</u>, Exh. CC at 6.

In response to Petitioner's post-trial motion to dismiss, the state offered to reduce the murder charge; however, Petitioner wanted dismissal of the count on the basis that jurisdiction was not proper. <u>Id.</u>, Exh. CC at 6. On March 19, 2003, the state moved the trial court to reduce Petitioner's conviction from guilty of first-degree murder to guilty of second-degree murder, which would allow for a sentence of less

---

[3] A letter from a Mexican diplomat states:
I reiterate that the government of Mexico is interested in seeing that the aforementioned reassurance of no application of life sentence on the accused, is complied with, this in case he is found guilty in the legal process being pursued against him in the United States of America, he is handed down a sentence of a determined number of years and not a life sentence, without concern for how these assurances are complied with by the United States government...
Answer, Exh. DD at 33.

-6-

than life imprisonment. <u>Id.</u>, Exh. UU. The motion states it was "made to satisfy extradition agreement between the governments of the United States and Mexico. Defendant and defense counsel are aware of this motion and have no objection thereto." <u>Id.</u>, Exh. UU. The trial court granted the motion on March 21, 2003. <u>Id.</u>, Exh. BB & Exh. VV.

The trial court conducted an aggravation and mitigation hearing on March 21, 2003, at which hearing Petitioner spoke on his own behalf. <u>Id.</u>, Exh. R & Exh. XX. At that time the court imposed an aggravated term of 20 years incarceration pursuant to Petitioner's conviction on the charge of second-degree murder. <u>Id.</u>, Exh. BB. The trial court found as aggravating circumstances the fact that the victim was a police officer who acted in his official capacity by trying to prevent the bank robbery, and the severe emotional harm to the officer's family. The state court also found as aggravating circumstances the presence of an accomplice, Petitioner's flight from the scene, and Petitioner's failure to self-surrender. The trial court found as other aggravating circumstances the fact that the murder occurred "in the immediate flight from a robbery to prevent detection" and Petitioner's decision to arm himself with assault rifles equipped with "banana-clips" and high-powered ammunition to ensure that he was "not apprehended at all costs." <u>Id.</u>, Exh. R at 68-69. Stating that "the aggravating factors far, far outweigh the mitigating factors," the trial court indicated it would have imposed the same sentence even if it had disregarded the victim's status as a police officer and the

-7-

pecuniary motive of the underlying armed robbery. The trial
court also stated the sentence was warranted by the aggravating
factors, which outweighed Petitioner's youthfulness and lack of
a prior criminal record at the time of the crime. Id., Exh. R
at 69.

The trial court imposed aggravated prison terms on the
remaining convictions based upon the presence of an accomplice,
flight from the scene, and the fact that the murder committed in
immediate flight to prevent detection. Id., Exh. R at 70-72.
The aggregate length of Petitioner's sentences is 106 years.
Id., Exh. R.

Petitioner took a direct appeal of his convictions and
sentences, arguing:

> The trial court erroneously replaced
> Defendant's first-degree murder conviction
> with a second-degree murder conviction
> because the conviction for that crime is not
> expressly allowed by the controlling
> extradition agreement between the United
> States and Mexico. And, the Supremacy Clause
> requires that the first-degree murder
> conviction be vacated because it conflicts
> with the controlling extradition agreement.

Id., Exh. CC at 32. Petitioner argued the State of Arizona had
violated the extradition agreement between the United States and
Mexico and the "doctrine of specialty" by reducing the charge
after conviction and by imposing consecutive sentences. Id.,
Exh. CC. In his direct appeal Petitioner also argued that the
trial court violated his Sixth Amendment right to a jury trial
by enhancing his sentence using facts that were neither admitted
by Petitioner nor found to be true beyond a reasonable doubt by

-8-

1 a jury.  Id., Exh. CC at 52.

2       The Arizona Court of Appeals affirmed Petitioner's
3 convictions and sentences in a decision issued August 16, 2005.
4 Id., Exh. EE.  The Court of Appeals noted that Mexico had agreed
5 to extradite Petitioner on a charge of first-degree murder.
6 Id., Exh. EE.  The Court of Appeals noted Mexico had agreed to
7 extradite Petitioner on that charge if the State of Arizona
8 agreed to oppose the imposition of a life sentence if convicted.
9 Id., Exh. EE.  Additionally, the Arizona Court of Appeals
10 reiterated the fact that, after Petitioner was convicted, his
11 counsel notified the Mexican government of Petitioner's
12 conviction.  Id., Exh. EE.  The Mexican government responded
13 that it was not in favor of the imposition of a life sentence.
14 Id., Exh. EE.

15       The Arizona Court of Appeals held that Petitioner's
16 extradition, trial, and conviction on the charge of first degree
17 murder was not in violation of the extradition agreement
18 because the agreement specifically provided Petitioner could be
19 extradited to face that charge.  Id., Exh. EE.  The appellate
20 court concluded that the means used to bring the sentence
21 mandated by the extradition agreement into compliance with
22 Arizona law did not deprive Petitioner of any substantive right.
23 Id., Exh. EE.  Additionally, the Arizona Court of Appeals
24 concluded that relief based on the application of the doctrine
25 of specialty would depend on the wishes of Mexico, which country
26 had indicated only a desire that Petitioner not be sentenced to
27 life imprisonment if convicted of first-degree murder.  Id.,

28                              -9-

Exh. EE.

The Arizona Court of Appeals also determined that, if there had been any violation of the specialty doctrine, the error was invited by Petitioner because there was no contemporaneous objection to the state's motion for diminution of the murder count and because prior to trial and in closing argument Petitioner himself had argued for conviction on the lesser-included offense of second-degree murder. _Id._, Exh. EE.

Petitioner did not seek review of the Court of Appeals' decision in his direct appeal by the Arizona Supreme Court.

Petitioner initiated an action for state post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure, on October 25, 2005. _Id._, Exh. HH. This action was dismissed on Petitioner's motion on November 14, 2005.

Petitioner filed another Rule 32 action on December 2, 2005. _Id._, Exh. KK. Petitioner was appointed counsel, who informed the state trial court on October 10, 2006, that she could not find any colorable claims to raise in a Rule 32 petition. _Id._, Exh. LL. Petitioner filed a pro per petition for relief, reasserting the claims raised in his direct appeal. _Id._, Exh. MM. The state trial court denied relief and the Arizona Court of Appeals denied review in a decision issued September 26, 2008. _Id._, Exh. PP & Exh. QQ.

Petitioner asserts he is entitled to relief from his convictions because the trial court's reduction of the first-degree murder conviction to second-degree murder was, he contends, erroneous. Petitioner asserts that "the conviction

for that [second-degree murder] is not expressly allowed by the controlling extradition agreement between the United States and Mexico." Accordingly, he argues, "the Supremacy Clause requires that the first-degree [murder conviction] be vacated because it conflicts with the extradition agreement". Petitioner also contends his sentences must be vacated because the trial court aggravated his sentence based on facts not found by the jury, in violation of his Sixth Amendment rights.

Respondents maintain the petition must be denied and dismissed. Respondents assert that Petitioner's challenge to the reduction of his first-degree murder conviction to second-degree murder is procedurally barred because the Arizona Court of Appeals found that Petitioner invited any error by requesting the challenged reduction in charge. Respondents also contend this claim may be denied because the Arizona Court of Appeals' ruling on the merits was neither contrary to, nor an unreasonable application of, United States Supreme Court precedent. Respondents assert the second claim for relief must be denied because Arizona Court of Appeals' rejection of Petitioner's Sixth Amendment challenge was neither contrary to, nor an unreasonable application of, Supreme Court precedent.

**II Analysis**

**The principles of exhaustion of claims and the presence of an "adequate and independent" state law basis for denial of habeas corpus relief on the merits of the claim**

> A federal court may not grant habeas relief to a state prisoner unless the prisoner has first exhausted his state court remedies. <u>See</u>

-11-

> 28 U.S.C. § 2254(b)(1). A petitioner satisfies the exhaustion requirement by fully and fairly presenting each claim to the highest state court. [] A petitioner fully and fairly presents a claim to the state courts if he presents the claim (1) to the correct forum, see § 2254(c); (2) through the proper vehicle, []; and (3) by providing the factual and legal basis for the claim, []. Full and fair presentation additionally requires a petitioner to present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief. []

Scott v. Schriro, 567 F.3d 573, 582 (9th Cir. 2009) (internal citations omitted).

"If a prisoner has defaulted a state claim by 'violating a state procedural rule which would constitute adequate and independent grounds to bar direct review ... he may not raise the claim in federal habeas, absent a showing of cause and prejudice or actual innocence.'" Ellis v. Armenakis, 222 F.3d 627, 632 (9th Cir. 2000), quoting Wells v. Maass, 28 F.3d 1005, 1008 (9th Cir. 1994).

To constitute an adequate and independent state procedural ground sufficient to support a state court's finding of procedural default, "a state rule must be clear, consistently applied, and well-established at the time of [the] petitioner's purported default." Lambright v. Stewart, 241 F.3d 1201, 1203 (9th Cir. 2001). A state rule is considered consistently applied and well-established if the state courts follow it in the "vast majority of cases." Scott, 567 F.3d at 580, quoting Dugger v. Adams, 489 U.S. 401, 417 n.6, 109 S. Ct. 1211, 1221

-12-

n.6 (1989). The Ninth Circuit Court of Appeals has held that "federal courts should not insist upon a petitioner, as a procedural prerequisite to obtaining federal relief, comply[] with a rule the state itself does not consistently enforce." Id., 567 F.3d at 581-82, quoting Siripongs v. Calderon, 35 F.3d 1308, 1318 (9th Cir. 1994). It is Respondents' burden to prove the rule cited and relied upon by the state court in denying relief was clear, consistently applied, and well-established at the time the rule was applied to Petitioner's case. Id.

Additionally, for the proffered state procedural bar to preclude the consideration of a habeas claim "the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." Caldwell v. Mississippi, 472 U.S. 320, 327, 105 S. Ct. 2633, 2638-39 (1985) (emphasis added). See also Harris v. Reed, 489 U.S. 255, 261-62, 109 S. Ct. 1038, 1042 (1989).

> "[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." Harris, 489 U.S. at 263, 109 S. Ct. 1038 []. ... Sanders v. Cotton, 398 F.3d 572, 580 (7th Cir. 2005) (where the state appellate court's discussion of waiver is intertwined with its merits analysis, the state court's decision does not rest on an independent and adequate state law ground)....

Pole v. Randolph, 570 F.3d 922, 937 (7th Cir. 2009) (some internal citations and quotations omitted). See also Scott, 567 F.3d at 581-82.

-13-

Respondents argue that the Court should not review the merits of Petitioner's extradition-based claim regarding the propriety of his conviction for first-degree murder and the reduction in his conviction to second-degree murder because the state court's decision denying his specialty doctrine claim in Petitioner's direct appeal rested on an adequate and independent basis for barring federal habeas relief. Respondents contend the adequate and independent state basis for rejecting Petitioner's claim is that Petitioner waived the objection by inviting any error. Respondents cite to cases indicating the rule was clear, consistently applied, and well-established at the time of Petitioner's direct appeal. <u>See</u> Answer (Docket No. 12) at 51-52.

Some federal courts have concluded that a state's common law "invited error" rule is an independent and adequate state law that is sufficient to bar federal habeas review of a claim for relief. <u>See</u> <u>Leavitt v. Arave</u>, 383 F.3d 809, 832-33 (9th Cir. 2004) (stating "[t]here is no reason that we should treat the invited error rule differently from other state procedural bars"); <u>Wilson v. Ozmint</u>, 357 F.3d 461, 467 (4th Cir. 2004); <u>Coleman v. O'Leary</u>, 845 F.2d 696, 699-701 (7th Cir. 1988); <u>Francois v. Wainwright</u>, 741 F.2d 1275, 1282 (11th Cir. 1984); <u>Tillman v. Cook</u>, 25 F. Supp. 2d 1245, 1274-76 (D. Utah 1998).

However, it is at least arguable whether the Arizona Court of Appeals' decision denying this claim in Petitioner's direct appeal rested on the bar of invited error. The appellate

-14-

court did begin discussion of the specialty doctrine claim by noting Petitioner had repeatedly sought the outcome achieved, i.e., conviction on second degree, rather than first degree, murder. After then thoroughly discussing the doctrine of specialty and applicable federal law and the merits of the claim, the Arizona Court of Appeals summarily stated that, "even if" Petitioner's conviction on second-degree murder had violated the specialty doctrine, any error was invited error and, accordingly, not reversible.

Because the claim may be denied on the merits and it is arguable if the state court decision may be affirmed based on the "adequate and independent" state bar, it is necessary to discuss whether the Court of Appeals' denial of the claim on the merits of the claim was clearly contrary to established federal law.

### Standard of review regarding exhausted claims

The Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court reached a decision contrary to clearly established federal law, or one involving an unreasonable application of clearly established federal law, or unless the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. See 28 U.S.C. § 2254(d) (1994 & Supp. 2008); Carey v. Musladin, 549 U.S. 70, 74-75, 127 S. Ct. 649, 653 (2006); Musladin v. Lamarque, 555 F.3d 834, 838 (9th Cir. 2009).

A state court decision is contrary to federal law if it applied a rule contradicting the governing law of Supreme Court opinions or if it reaches a different result than a Supreme Court case on the presentation of materially indistinguishable facts. See Williams v. Taylor, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 1519 (2000). The state court's decision is an unreasonable application of clearly established federal law only if it can be considered objectively unreasonable. Id., 529 U.S. at 409, 120 S. Ct. at 1521. United States Supreme Court holdings at the time of the state court's decision are the source of "clearly established federal law" for the purpose of the "unreasonable application" prong of federal habeas review. Id., 529 U.S. at 412, 120 S. Ct. at 1523; Barker v. Fleming, 423 F.3d 1085, 1093 (2005).

### Violation of extradition agreement

Petitioner contends that the trial court violated the extradition treaty between the United States of America and Mexico by convicting him of first degree murder because, Petitioner argues, the governing treaty did not allow for a Mexican national's extradition for prosecution on an offense which could result in life imprisonment. Petitioner also contends that reducing the conviction from first-degree murder to second-degree murder violates the specialty doctrine, i.e., the doctrine that one can only be tried for the offense specified in the extradition agreement.

Petitioner raised these issues in a pre-trial motion. The motion was denied by the state trial judge after briefing

-16-

1    and oral argument regarding the diplomatic note, the relevant
2    treaty, the current status of the interpretation and extension
3    of the treaty, the circumstance of Petitioner's case, including
4    the exchange of notes between Mexican and United States
5    officials regarding Petitioner's extradition agreement, and
6    Arizona law.  <u>See</u> Response, Exh. G.

7         The Arizona Court of Appeals denied the extradition-
8    based claims on the merits when presented in petitioner's direct
9    appeal.  The Court of Appeals determined:

               The doctrine of specialty provides that a
          state that has obtained extradition of a
          person is prohibited from prosecuting that
          person "for any offense other than that for
          which the surrendering state agreed to
          extradite." <u>United States v. Andonian</u>, 29
          F.3d 1432, 1434-35 (9th Cir. 1994) (internal
          citations omitted).
               An extradited person may be tried for
          offenses other than those for which the
          person was surrendered if the extraditing
          country consents. The proceedings did not
          violate the doctrine of specialty. Romero was
          extradited for first-degree murder, all in
          compliance with the extradition agreement and
          the doctrine of specialty. The subsequent
          reduction to the lesser-included offense of
          second-degree murder in order to comply with
          the sentencing provisions of the agreement
          does not mandate reversal of Romero's
          conviction.
               * * *
               Extradition treaties are construed liberally
          to effect their purpose of surrendering
          fugitives to be tried for their alleged
          offenses. <u>United States v. Wiebe</u>, 733 F.2d
          549, 554 (8th Cir. 1984). Under these
          circumstances, the reduction of Romero's
          conviction to a lesser-included offense
          constituted a reclassification contemplated
          by the treaty. Romero does not contest that
          the charge of second-degree murder, as a
          lesser included offense of first-degree
          murder, was based on the same factual
          allegations as those established in the

                              -17-

> request for extradition based on first-degree
> murder, or that the punishment for second
> degree murder provided for a sentence of less
> than life imprisonment. Therefore, the treaty
> itself permitted a conviction for
> second-degree murder.

Answer, Exh. EE at 9-10.

In "United States v. Rauscher, 119 U.S. 407, 7 S. Ct. 234 (1886), and Johnson v. Browne, 205 U.S. 309, 27 S. Ct. 539 (1907), the Supreme Court set forth principles for interpreting extradition treaties and analyzed the effect of limitations on what offenses may be punished by the extraditing country." Rodriquez Benitez v. Garcia, 495 F.3d 640, 643 (9th Cir. 2007). The Arizona Court of Appeals' decision denying Petitioner's claim was not an objectively unreasonable application of the holdings in these cases.

> Rauscher established the doctrine of
> specialty, which provides that an extradited
> defendant may not be prosecuted for any
> offense other than that for which the
> surrendering country agreed to extradite.[].
> ...
> In Browne, a defendant who was convicted in
> the United States of conspiracy to defraud
> the government fled the country and was
> extradited from Canada under a treaty which
> did not cover conspiracy. [] Because of the
> treaty's limitations, Canadian authorities
> surrendered the defendant for another offense
> but not for the conspiracy charge. [] The
> Supreme Court, looking to the agreed-upon
> terms of extradition and to the relevant
> treaty language, refused to uphold a
> reinstated conviction on the conspiracy
> charge.

Rodriquez Benitez, 495 F.3d at 643-44 (internal citations and quotations omitted).

-18-

Similar to the circumstance of the petitioner in _Rodriquez Benitez_, the terms of the agreement regarding the Petitioner's extradition indicated Mexico's concern about the sentence which could be imposed on Petitioner and not the degree of murder on which Petitioner could be tried. The Arizona trial court's reduction of the crime of conviction, which was supported by the evidence adduced at trial and which reduction was not contemporaneously opposed by Petitioner, did not deprive Petitioner of a substantive constitutional right. Cf. _United States v. Campbell_, 300 F.3d 202, 211 (2d Cir. 2002) (recognizing a difference between extradition terms limiting what sentence could be entered by the receiving state's courts and what sentence the receiving state could force the prisoner to serve).

The Ninth Circuit Court of Appeals concluded in _Rodriquez Benitez_ that, because Supreme Court precedent, i.e., _Rauscher_ and _Browne_, addressed limitations on charged offenses and the case before them involved limitations on the petitioner's sentence, it could not be said that the state court's opinion was contrary to clearly established federal law because to decide otherwise would have required an extension of the specialty doctrine. See 495 F.3d at 644. "Only if the refusal to extend _Rauscher_'s and _Browne_'s holdings was objectively unreasonable must Benitez be granted a writ." Id. "Refusing to extend Supreme Court holdings governing limitations on charged offenses to unilaterally imposed sentencing conditions was not objectively unreasonable, and therefore AEDPA

-19-

1  requires us to leave the decision of the California court

2  undisturbed." Id. Similarly, the Arizona court's decision

3  regarding Petitioner's claims based on the specialty doctrine

4  and the reduction of Petitioner's conviction was not objectively

5  unreasonable and Petitioner is not entitled to habeas relief on

6  this claim.

7  **Sixth Amendment sentencing claim**

8  Petitioner asserts his aggravated prison terms violate

9  his Sixth Amendment rights and the doctrine of Blakely v.

10  Washington because the trial court, rather than a jury, found

11  the existence of the six circumstances used to aggravate his

12  sentence for second-degree murder.

13  In rejecting relief on this claim, the Arizona Court of

14  Appeals applied the Arizona Supreme Court's decision in Arizona

15  v. Martinez, 210 Ariz. 578, 115 P.3d 618 (2005), interpreting

16  Blakely. Answer, Exh. EE at 16-17. The appellate court

17  concluded that, pursuant to Martinez, Petitioner's

18  constitutional rights were not violated because Petitioner had

19  conceded at least one aggravating circumstance, i.e., the

20  presence of an accomplice. The Court of Appeals reiterated the

21  holding of Martinez that, once it was established that a single

22  Blakely-compliant aggravating factor existed, i.e., a jury had

23  found or the defendant had admitted the existence of an

24  aggravating factor, the defendant's rights were not violated

25  because the trial judge found additional aggravating factors.

26  The Arizona courts have interpreted Blakely to allow

27  for the imposition of an aggravated sentence founded partially

28  -20-

on facts not found by a jury if at least one aggravating factor is compliant with _Blakely_, i.e., found by a jury or admitted by the defendant.  See _Arizona v. Martinez_, 210 Ariz. 578, 115 P.3d 618 (2005); _Arizona v. Henderson_, 210 Ariz. 561, 115 P.3d 601 (2005).  The sentencing scheme iterated in _Martinez_ was upheld upon review by the United States Supreme Court.  See _Martinez v. Arizona_, 546 U.S. 1044, 126 S. Ct. 762 (2005).

Arizona's response to _Blakely_ as explained in _Martinez_ has been found to be not clearly contrary to federal law.  See _Cunningham v. California_, 549 U.S. 270, 294 n.17, 127 S. Ct. 856, 871 n.17 (2007) (finding California's sentencing process unconstitutional and analyzing the Colorado Supreme Court's response to _Blakely_ in _Colorado v. Lopez_, 113 P.3d 713, 716 (Colo. 2005); Colorado's _Lopez_ decision is materially similar to the Arizona Supreme Court's _Martinez_ opinion); _Stokes v. Schriro_, 465 F.3d 397, 402-03 (9th Cir. 2006) (holding "the Arizona state courts' interpretation of these [sentencing] provisions does not contradict clearly established federal law").  Accordingly, the Arizona court's decision denying this claim in Petitioner's direct appeal was not clearly contrary to federal law and Petitioner is not entitled to relief on this claim.

**III Conclusion**

The Arizona Court of Appeals' decision denying Petitioner's claims for relief was not clearly contrary to federal law with regard to any stated claim for relief.

**IT IS THEREFORE RECOMMENDED** that Mr. Romero's Petition for Writ of Habeas Corpus be **denied and dismissed with prejudice**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have ten (10) days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation

-22-

of the Magistrate Judge.

DATED this 19th day of August, 2009.

_____
Mark E. Aspey
United States Magistrate Judge